



21-103/2663-18

L-701        STATE OF HAWAII
OFFICE OF ASSISTANT REGISTRAR
RECORDED
JUN 13, 2008        03:00 PM

Doc No(s) 3758610

on Cert(s) 910,107

/s/ CARL T. WATANABE
ASSISTANT REGISTRAR

COPY

20    1/1    Z13

18
291

_____ LAND COURT _____ REGULAR SYSTEM
AFTER RECORDATION, RETURN BY:   MAIL ( )   PICK-UP ( X )

ALSTON HUNT FLOYD & ING (JKT)
TELEPHONE: (808) 524-1800

TG: 2008272404   LC①
TGE: AB2030345
Tamara Cabanilla-Ancajes

Tax Map Key No.: Maui 2-1-008-062, CPR No. 8          Total Pages: _____

## MORTGAGE

PARTIES TO DOCUMENT:

BORROWER:      MALUHIA EIGHT, LLC, a Delaware limited liability company

LENDER:        COMPASS BANK, a national banking association

THIS MORTGAGE is made as of the 13th day of June, 2008, between MALUHIA EIGHT, LLC, a Delaware limited liability company, whose address is 150 North Wacker Drive, Suite 1120, Chicago, Illinois 60606 (hereinafter called the "Borrower"), and COMPASS BANK, a national banking association, whose address is 8080 N. Central Expressway, Suite 400, Dallas, Texas 75206 (hereinafter called the "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of THREE MILLION FIVE HUNDRED SIXTY FIVE THOUSAND AND NO/100 DOLLARS ($3,565,000.00), which indebtedness is evidenced by Borrower's note of even date herewith (hereinafter referred to as the "Note");

679070_2/9187-1                              1



EXHIBIT

B
_____

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon and the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of the Mortgage, and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant, convey and assign to Lender, as **TENANT IN SEVERALTY**, with power of sale, all of the following property:

All of the property described in Exhibit "A" attached hereto and hereby incorporated herein by this reference.

TOGETHER WITH all the improvements now or hereafter erected on the property and all easements, rents, rights, appurtenances, royalties, minerals, water, water rights and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are herein referred to as the "Property".

AND TOGETHER ALSO WITH (1) if the mortgaged property consists of a leasehold, all options and rights of the Lessee under the lease agreement, and (2) if the mortgaged property consists of an apartment or unit in a condominium, or a unit in a planned unit development, all rights and options and voting rights accruing to the Borrower under the terms of the Declaration and By-Laws of the Horizontal Property Regime or Condominium Property Regime or the Declaration of Covenants, Conditions and Restrictions of the planned unit development and other documents applicable to the premises and any amendment thereof, including the apartment or unit lease herein mentioned, if any. In either case it being agreed and understood that at the option of the Lender, where the Borrower has the right to exercise any options or rights as between the lessee and the lessor if a leasehold, and any options or rights as among the apartment or unit owners, the decision as to the exercise of such rights and options shall be made solely by the Lender. The Borrower, in addition to the foregoing, hereby nominates and appoints the Lender (irrevocable so long as this Mortgage remains in effect) the Borrower's proxy to vote, and the Borrower's agent to act, pursuant to the Declaration, By-Laws or the Declaration of Covenants, Conditions and Restrictions and other documents applicable to the premises and any amendment thereof; Failure of the Lender to exercises said rights and options and voting rights shall not be construed as a waiver of the rights to exercise such rights, options or voting rights. The Borrower shall exercise such rights, options and votes, except for (1) rights, options and votes involved in the determination to rebuild upon destruction or condemnation of the mortgaged premises and the distribution of the insurance or condemnation proceeds arising upon such destruction or condemnation, (2) with respect to construction plans, partition of the condominium property regime or planned unit development, (3) amendments of the Declaration or By-Laws or the Declaration of Covenants, Conditions and Restrictions and any amendment thereof, (4) appointment of a managing agent, if any, and (5) all rights, options and votes which, in the sole discretion of the Lender, would impair the security of this Mortgage, so long as this Mortgage is not in default, or in the alternative, unless the Lender shall give notice in writing to the Borrower at Borrower's last known

address of its intention to exercise such rights, options and voting rights under the above provision.

TO HAVE AND TO HOLD the same with all improvements now or hereafter erected thereon, and all rights, privileges and appurtenances thereto belonging, and the rents, issues and profits thereof and all of the estate, rights, easements, title and interest of the Borrower both at law and in equity, therein and thereto, or appertaining or held and enjoyed therewith, unto the Lender, and its successors and assigns forever, or for the unexpired term of the lease, if leasehold.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, that if the Property consists of a leasehold estate, then such lease is in all respects in good standing, genuine, valid and in full force and effect, that Borrower is the lawful owner of all personal property which may be mortgaged hereby, that the Property is unencumbered except as described in Exhibit "A", that all rents, covenants and conditions in any lease or grant or other interest herein mentioned to be paid, observed or performed by Borrower have been paid, observed or performed up to the date hereof, and that Borrower will WARRANT AND DEFEND the same to Mortgagee against all claims and demands, subject to any declarations, easements or restrictions or encumbrances mentioned in Exhibit "A" attached hereto. Borrower covenants and agrees as follows:

1.      Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest on the indebtedness evidenced by the Note, and any prepayment and late charges as provided in the Note.

2.      Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first to property expenses, then to any prepayment and late charges, then to any advance by or other costs of Lender, then to interest payable on the Note, and last to the principal due under the Note.

3.      Charges; Liens. Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, directly to the payee thereof, unless otherwise directed by Lender. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and Borrower shall promptly furnish to Lender receipts evidencing such payments. Borrower shall promptly discharge any lien which has priority over this Mortgage; provided, that Borrower shall not be required to discharge any such lien so long as Borrower shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Lender, or shall in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof.

4.      Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hurricane, hazards

679070_2/9187-1

included within the term "extended coverage," by flood (if the Property is located in an area which has a flood hazard), and such other hazards as Lender may require and in such amounts and for such periods as Lender may require; provided, however, that if the Property or any portion thereof constitutes an apartment in a condominium property regime, or a unit in a planned unit development, and the Declaration of Horizontal or Condominium Property Regime or By-Laws or Declaration of Covenants, Conditions and Restrictions applicable thereto provides that the Association of Apartment or Unit Owners keep all buildings of the project or planned unit development insured against loss or damage by fire with coverage satisfactory to Lender, then the Borrower's obligations under this paragraph 4 shall be satisfied so long as the Association of Apartment Owners established by the Declaration of Horizontal or Condominium Property Regime herein mentioned or the Community Association of said planned unit development (either such Association, as applicable, herein referred to as the "Association"), keeps or causes to be kept insured all building and improvements now or hereafter constituting the said project or planned unit development.

The insurance carrier(s) providing the insurance shall be chosen by Borrower or the Association from insurance companies authorized to do business in the State of Hawai'i. All premiums on insurance policies shall be paid by Borrower, when due, directly to the insurance carrier, unless otherwise directed by Lender.

All insurance policies and renewals thereof shall be in form acceptable to Lender and shall include a standard mortgagee clause in favor of and in form reasonably acceptable to Lender. If the Borrower shall procure any other insurance on the improvements on the Property, all such insurance shall likewise include such standard mortgagee clause in favor of the Lender and will be claimable by the Lender for application in accordance with this paragraph, and, whether or not so made payable, may be recovered by the Lender by any appropriate proceedings and be similarly applied. Lender shall have the right to hold the policies and renewals thereof, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is damaged or destroyed, then the proceeds of the insurance insuring against such damage or destruction will be applied, at Borrower's option, to repair, restore or rebuild the Property, or to reduce the amount Borrower owes to Lender under the Note and under this Mortgage. Any such proceeds not used to repair, restore or rebuild the Property shall be applied to the sums secured by the Mortgage. If the insurance proceeds are to be applied to the sums secured by this Mortgage, then the excess proceeds, if any, shall be paid to Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within thirty (30) days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds to restoration or repair of the Property.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not incur any prepayment charge nor extend or postpone the

due date of any installment called for under the Note or change the amount of any such installments. If under paragraph 15 hereof the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured by this Mortgage immediately prior to such sale or acquisition.

5.    Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations or the condominium or planned unit development, and constituent documents. Borrower shall not make additions or major improvements to the Property without Lender's consent. Lender may inspect plans and specifications and may condition Lender's consent on Borrower obtaining required building permits, consents of owner's associations, and lenders, plus evidence of Borrower's adequate financing and/or bonding to pay for the improvements.

6.    Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearance, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs.

Any amounts disbursed by Lender pursuant to this paragraph 6, with interest thereon, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of the disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder.

7.    Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause thereof related to Lender's interest in the Property.

8.    Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, there shall be applied to the sums secured by this Mortgage such proportion of the proceeds as is equal to that proportion which the amount of the sums secured by this Mortgage immediately prior to the date of taking bears to the fair market value of the Property immediately prior to the date of taking, with the balance of the proceeds paid to Borrower.

If the Property is abandoned by Borrower, or if after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not incur any prepayment charge nor extend or postpone the due date of any installment called for under the Notes or change the amount of any such installments.

9.    Continuing Liability of Borrower. Unless Lender agrees in writing to release the original Borrower or any of Borrower's successors in interest, any extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest.

10.    Forbearance by Lender Not a Waiver. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Mortgage.

11.    Remedies Cumulative. All remedies provided in this Mortgage are distinct and cumulative and any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently, or successively.

679070_2/9187-1

12.    Successors and Assigns Bound; Joint and Several Liability; Captions. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14 hereof. All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

13.    Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by mailing such notice by certified mail, return receipt requested addressed to Borrower at the address on the first page of this Mortgage or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

14.    Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, which consent shall not be unreasonably withheld, including without limitation by way of a conveyance, agreement of sale, or otherwise, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such an option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach an agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 14, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note. Lender shall not exercise such option if Lender is prohibited by federal law from doing so.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 13 hereof. Such notice shall provide a period of not less than thirty (30) days from the date the notice is mailed within which Borrower must pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 15 hereof or otherwise permitted by law.

a.    Subordination of Other Debts. Lender agrees that Borrower may incur additional debt on the Property ("Subordinated Debt"), provided that such Subordinated Debt has been subordinated to any and all obligations of Borrower to Lender or its affiliates now or hereafter existing while this Mortgage is in effect..

15.    Acceleration; Remedies. Upon Borrower's material breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 13 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than thirty (30) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may bring a lawsuit to foreclose and sell the Property and may also invoke any other remedies permitted by law. The other remedies that Lender may invoke include remedies known variously as a power of sale, power of sale foreclosure, power of sale remedy, or a nonjudicial foreclosure. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 15, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail Borrower a notice of sale in the manner provided in paragraph 13 hereof. Lender shall publish a notice of sale and shall sell the Property at the time and place specified in the notice of sale. Lender or Lender's designee may purchase the Property at any sale under power of sale or judicial sale.

The proceeds of any sale shall be applied in the following order: (a) to all reasonable costs and expenses of sale, including, but not limited to, reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto. **IF THE PROCEEDS SHALL BE INSUFFICIENT TO DISCHARGE THE ENTIRE INDEBTEDNESS OF BORROWER TO LENDER, THE LENDER MAY HAVE OTHER LEGAL RECOURSE AGAINST BORROWER FOR THE DEFICIENCY.**

16.    Governing Law; Severability. This Mortgage shall be governed by the law of the State of Hawai'i. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such provision shall not be given effect and such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Mortgage and the Note are declared to be severable.

17.    Assignment of Rents; Appointment of Receiver. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, if any, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

679070_2/91187-1                                                8

Upon acceleration under paragraph 15 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

18.    Defaults on Prior Mortgages. A default under any mortgage prior to this Mortgage that continues for thirty (30) days or more, or the commencement of any action to foreclose any such prior mortgage, shall constitute a default under this Mortgage and all amounts secured hereby shall immediately become due and payable without notice at the option of the Lender, notwithstanding the provisions of paragraph 15 to the contrary.

If the Borrower defaults under any prior mortgage, the Lender shall have the right but not the obligation to cure any such default, and all amounts paid or advanced by Lender to cure such default, including all costs and expenses incident thereto, together with interest from the time of such payments shall be added to the indebtedness secured by this Mortgage and may be collected hereunder at any time thereafter.

19.    Release. Upon payment of all sums secured by this Mortgage and payment by Borrower for the cost of a release, Lender shall release this Mortgage. Borrower shall pay all costs of recordation, if any.

[END OF TEXT, CONTINUED ON NEXT PAGE]

IN WITNESS WHEREOF, Borrower has executed these presents the day and year first above written.

MALUHIA EIGHT, LLC
a Delaware limited liability company
By:    PRM Management of Illinois, Inc., an
       Illinois corporation
Its:   Manager

By _____
   ROBERT W. HARTE
   Its: President

"Borrower"

10

STATE OF _____*Illinois*_____ )
                              ) SS:
COUNTY OF _____*Cook*_____ )

On this _____*10th*_____ day of June, 2008, before me personally appeared
ROBERT W. HARTE, to me personally known, who being by me duly sworn or
affirmed, did say that such person executed the foregoing instrument as the free act
and deed of such person, and if applicable, in the capacity shown, having been duly
authorized to execute such instrument in such capacity.


_____
Notary Public, in and for said above named
State and County


_____
Printed Name of Notary

My commission expires: _____*11-19-09*_____


```
"OFFICIAL SEAL"
DEMERETTE KEE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-19-2009
```

679070_2/9187-1

<u>EXHIBIT A</u>

-FIRST:-

Apartment No. 8 of the Condominium Property known as "MALUHIA AT WAILEA" as established by Declaration of Condominium Property Regime dated November 10, 2000, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 2664565, as amended, and as shown on Condominium Map No. 1384 and any amendments thereto.

Together with the rights in the limited common elements appurtenant to said Apartment as described in the Declaration and Condominium Map and nonexclusive easements for ingress and egress and support of said Apartment through the common elements of the condominium and for repair of said Apartment through all other apartments and through the common elements of the condominium.

-SECOND:-

An undivided 7.142% interest in and to the common elements of the condominium as described in the Declaration and Condominium Map, subject as to said common elements to nonexclusive easements appurtenant to all apartments for ingress, egress, support and repair.

The land upon which said "MALUHIA AT WAILEA" condominium project is situate is described as follows:

All of that certain parcel of land situate at Honuaula, District of Makawao, Island and County of Maui, State of Hawaii, described as follows:

LOT 216, area 10.578 acres, more or less, as shown on Map 31, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1804 of Matson Navigation Company.

Being land(s) described in Transfer Certificate of Title No. 910,107 issued to MALUHIA EIGHT, LLC, a Delaware limited liability company, as to an undivided 7.142% interest.

BEING THE PREMISES ACQUIRED BY WARRANTY DEED

GRANTOR            :         M-35 LLC, a Hawaii limited liability company

GRANTEE            :         MALUHIA EIGHT, LLC, a Delaware limited liability
                             company

679070_2/9187-1                         12

DATED          :     May 22, 2008
FILED          :     Land Court Document No. 3754116

SUBJECT, HOWEVER, to the following:

1.   Any lien for real property taxes not yet delinquent.
     (Tax Map Key:  Maui  2-1-008-062, CPR No. 8)

2.   Title to all mineral and metallic mines reserved to the State of Hawai'i.

3.   Location of the seaward boundary in accordance with the laws of the State of
     Hawaii and shoreline setback line in accordance with County regulation and/or
     ordinance and the effect, if any, upon the area of the land described herein.

4.   Designation of Easement "M" for utility purposes as shown on Maps 5 and 31, as
     set forth by Land Court Order No. 37357, filed April 27, 1973, as amended by
     Land Court Order No. 47774, filed July 26, 1977, and is limited to the boundaries
     as represented on survey map prepared by Alden S. Kajioka, Land Surveyor,
     with ControlPoint Surveying, Inc., dated October 21, 1999.

5.   Grant in favor of BOARD OF WATER SUPPLY OF THE COUNTY OF MAUI
     dated February 21, 1978, filed as Land Court Document No. 874663; granting an
     easement for waterline purposes over said Easement "M", which easement is
     limited to the boundaries as represented on survey map prepared by Alden S.
     Kajioka, Land Surveyor, with ControlPoint Surveying, Inc., dated October 21,
     1999.

6.   Grant in favor of MAUI ELECTRIC COMPANY, LIMITED and VERIZON HAWAII
     INC., now known as HAWAIIAN TELCOM, INC., dated September 21, 1977,
     filed as Land Court Document No. 874664; granting an easement for electrical
     purposes over said Easement "M", which easement is limited to the boundaries
     as represented on survey map prepared by Alden S. Kajioka, Land Surveyor,
     with Control Point Surveying, Inc., dated October 21, 1999.

7.   The terms and provisions contained in the following:

     INSTRUMENT      :      DECLARATION

     DATED          :      January 17, 1975
     FILED          :      Land Court Document No. 713123

     Said Declaration was amended by Annexation Instruments dated December 31,
     1975, filed as Land Court Document No. 748896, dated July 30, 1976, filed as
     Land Court Document No. 775417, and dated December 30, 1976, filed as Land
     Court Document No. 799269.

679070_2/9187-1                          13

8.    Designation of Easement "17" for utility purposes as shown on Maps 11 and 31, as set forth by Land Court Order No. 43594, filed December 31, 1975, and is limited to the boundaries as represented on survey map prepared by Alden S. Kajioka, Land Surveyor, with ControlPoint Surveying, Inc., dated October 21, 1999.

9.    Grant in favor of MAUI ELECTRIC COMPANY, LIMITED and VERIZON HAWAII INC., now known as HAWAIIAN TELCOM, INC., dated September 19, 1977, filed as Land Court Document No. 875227; granting an easement for electrical purposes over said Easement "17", which easement is limited to the boundaries as represented on survey map prepared by Alden S. Kajioka, Land Surveyor, with ControlPoint Surveying, Inc., dated October 21, 1999.

10.   The terms and provisions contained in the following:

INSTRUMENT        :        UNRECORDED DEVELOPMENT AGREEMENT

DATED             :        July 30, 1976
PARTIES           :        WAILEA DEVELOPMENT COMPANY, a joint venture comprised of WAILEA LAND CORPORATION, a Delaware corporation, and THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a Wisconsin corporation, as "Owner", and GROSVENOR INTERNATIONAL (HAWAII) LIMITED, a Hawaii corporation, as "Developer"

A Short Form of which was filed as Land Court Document No. 775420.

11.   The terms and provisions contained in the following:

INSTRUMENT        :        DEED

DATED             :        December 30, 1976
FILED             :        Land Court Document No. 799270

The foregoing includes, but is not limited to, matters relating to reservations affecting Easements "M" and "17".

12.   Designation of Easement "35" as shown on Map 14, amended, and Map 31, as set forth by Land Court Order No. 46743, filed March 7, 1977, as amended by Land Court Order No. 46744, filed March 7, 1977, and is limited to the boundaries as represented on survey map prepared by Alden S. Kajioka, Land Surveyor, with ControlPoint Surveying, Inc., dated October 21, 1999.

13.   Grant in favor of MAUI ELECTRIC COMPANY, LIMITED dated September 19, 1977, filed as Land Court Document No. 876974; granting an easement for electrical purposes over said Easement "35", which easement is limited to the boundaries as represented on survey map prepared by Alden S. Kajioka, Land Surveyor, with ControlPoint Surveying, Inc., dated October 21, 1999.

14.   The terms and provisions contained in the following:

INSTRUMENT        :        DEED

DATED             :        April 24, 1978
FILED             :        Land Court Document No. 871486

The foregoing includes, but is not limited to, matters relating to reservations affecting said Easements "M", "17" and "35".

15.   The terms and provisions contained in the Chapter of Incorporation and By-Laws of the Wailea Property Owners Association filed with the Department of Regulatory agencies of the State of Hawaii on December 9, 1974 and April 29, 1976, respectively, as mentioned in Deed dated April 24, 1978, filed as Land Court Document No. 871486.

NOTE:     Filed with the Department of Commerce and Consumer Affairs of the State of Hawaii (Business Registration), is the involuntary dissolution of WAILEA PROPERTY OWNERS' ASSOCIATION on November 15, 1993.

16.   Designation of Easement "29" for pedestrian access, recreational and landscaping as shown on Maps 11 and 31, as set forth by Land Court Order No. 43594, filed December 31, 1975, and, as to Lot 216, is limited to the boundaries as represented on survey map prepared by Alden S. Kajioka, Land Surveyor, with ControlPoint Surveying, Inc., dated October 21, 1999.

17.   Grant in favor of VERIZON HAWAII INC., now known as HAWAIIAN TELCOM, INC., dated March 11, 1993, filed as Land Court Document No. 2022192; granting a perpetual right and easement for utility purposes over Easement "1" as shown on the map attached thereto, which easement is limited to the boundaries as represented on survey map prepared by Alden S. Kajioka, Land Surveyor, with ControlPoint Surveying, Inc., dated October 21, 1999.

18.   The following matters as shown on survey map prepared by Alden S. Kajioka, Land Surveyor, with ControlPoint Surveying, Inc., dated October 21, 1999:

(A)   Roadway protrudes outside of Easement "M".

(B)   Drainage outlet in Lot 217 drains into Lot 216.

679070_2/9187-1

(C)     Chain gate and container protrude into Lot 216 from Lot 217.

(D)     Concrete sidewalk crosses from Lot 217 into Lot 216.

(E)     Mesh fence, sprinklers and hose bib protrude from Lot 217 into Lot 216.

(F)     MECO box straddles boundary between Lot 216 and Wailea Alanui Drive.

19.     The terms and provisions contained in the following:

INSTRUMENT     :     UNILATERAL AGREEMENT

DATED     :     August 17, 2000
FILED     :     Land Court Document No. 2644957
PARTIES     :     M-35 LLC, a Hawaii limited liability company, and
COUNTY OF MAUI

20.     The terms and provisions contained in the following:

INSTRUMENT     :     DECLARATION OF CONDOMINIUM PROPERTY
REGIME FOR "MALUHIA AT WAILEA"
CONDOMINIUM PROJECT

DATED     :     November 10, 2000
FILED     :     Land Court Document No. 2664565
MAP     :     1384 and any amendments thereto

Said Declaration was amended by instruments dated January 24, 2001, filed as
Land Court Document No. 2681262, dated March 23, 2004, filed as Land Court
Document No. 3168527, and dated April 18, 2005, filed as Land Court Document
No. 3255218.

21.     The terms and provisions contained in the following:

INSTRUMENT     :     BY-LAWS OF THE ASSOCIATION OF APARTMENT
OWNERS

DATED     :     November 10, 2000
FILED     :     Land Court Document No. 2664566

Said By-Laws was amended by instrument dated April 21, 2006, filed as Land
Court Document No. 3500155.

22.     Designation of Easements "501", "502" and "503" for utility purposes as shown
on Map 96, as set forth by Land Court Order No. 148003, filed November 8,
2002.

679070_2/9187-1                               16

23.   Grant in favor of MAUI ELECTRIC COMPANY, LIMITED and VERIZON HAWAII INC., now known as HAWAIIAN TELCOM, INC., dated September 16, 2001, filed as Land Court Document No. 2863335; granting a perpetual and non-exclusive right and easement over Easements "501" and "502" for utility purposes.

24.   The terms and provisions contained in the following:

INSTRUMENT          :     WATERLINE EASEMENT AGREEMENT

DATED               :     March 10, 2003
FILED               :     Land Court Document No. 2910702
PARTIES             :     M-35 LLC, a Hawaii limited liability company and the COUNTY OF MAUI, a political subdivision of the State of Hawaii

25.   Grant in favor of the COUNTY OF MAUI, a political subdivision of the State of Hawaii, through its Department of Water Supply, dated January 22, 2004, filed as Land Court Document No. 3125461; granting a perpetual nonexclusive easement over said Easement "501" for waterline purposes.

26.   Grant in favor of the COUNTY OF MAUI, a political subdivision of the State of Hawaii, through its Department of Water Supply, dated January 22, 2004, filed as Land Court Document No. 3125468; granting a perpetual nonexclusive easement over said Easement "502" for waterline purposes.

27.   Any unrecorded leases and matters arising from or affecting the same.


## END OF EXHIBIT A