Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: mgoolsby@pronskepatel.com

**COUNSEL FOR THE DEBTORS**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **MALUHIA ONE, LLC,** | § | CASE NO. 10-30987-SGJ-11 |
| | § | |
| Debtor. | § | CHAPTER 11 |
| | § | |
| **In re:** | § | |
| | § | |
| **MALUHIA EIGHT, LLC,** | § | CASE NO. 10-30986-HDH-11 |
| | § | |
| Debtor. | § | CHAPTER 11 |
| | § | |

### JOINT PLAN OF REORGANIZATION

Maluhia One, LLC ("Maluhia One") and Maluhia Eight, LLC ("Maluhia Eight"), (collectively, the "Debtors") propose the following Plan of Reorganization (the "Plan").

### ARTICLE I
### SUMMARY OF THE PLAN

1.1    Overview of the Plan.  The Plan provides for a reorganization of all liabilities owed by the Debtors, as described herein.  The Reorganized Debtors, as provided herein, shall be the successor entity to the Debtors.

1.2    Payments to Creditors.  The Plan provides for Creditors to be paid as provided in Article V herein from the restructuring of the Debtors' debt structure and the development and

sale of the Properties. All Creditors of the Debtors will be paid as provided herein in accordance with the priority scheme established by the Code.

## ARTICLE II
## **DEFINITIONS**

As used in this Plan, the following terms shall have their respective meanings set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.1 Administrative Claim: Any claim for payment of any cost or expense of administration of the Chapter 11 Bankruptcy Proceedings entitled to priority in accordance with §§ 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtors' Estates and operating their businesses from and after the Petition Date to and including the Confirmation Date (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Distribution Date) and all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtors' Estates under Chapter 11 of Title 28, United States Code.

2.2 Allowed Claim or Allowed Interest: Any Claim (a) based on an application of a Professional Person to the extent such application is approved by Final Order; (b) allowed under this Plan; or (c) proof of which was timely and properly filed, deemed filed under applicable law or by reason of an Order of the Court or, if no proof of claim was filed or Order entered, which has been or hereafter is listed by the Debtors in their schedules filed under § 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent, provided that a timely filed proof of claim shall supersede any scheduling of such claim, and, in either case, a claim as to which such other applicable period of limitation fixed by the Bankruptcy Code or by an Order of the Court to which (i) no objection has been filed, or, (ii) in the event that an objection has been filed, any objection has been withdrawn pursuant to the provisions of this Plan or has been overruled by a Final Order of the Court.

2.3 Allowed Priority Claim: All or that portion of any Priority Claim which is or has become an Allowed Claim.

2.4 Bank Lenders: OneWest and Compass.

2.5 Bank of America: Bank of America, N.A., as successor to LaSalle Bank, N.A., Indenture Trustee for the 12% Collateralized Profit Participation Debt Securities Due January 31, 2012 issued by Maluhia One.

2.6 Bank of New York: The Bank of New York Mellon Trust Company, N.A., Indenture Trustee for the 12% Collateralized Profit Participation Debt Securities Due May 31, 2012 issued by Maluhia Eight.

2.7    Bankruptcy Code:  The Bankruptcy Reform Act of 1978 as amended, and as applicable to the Chapter 11 case, § 101 et seq. Title 11, United States Code.

2.8    Bankruptcy Rules:  The rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

2.9    Business Day:  Any day on which banks are open to carry on their ordinary commercial banking business in Dallas, Texas.

2.10    Cash:  Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.11    Causes of Action:  All accounts, contract rights, general intangibles and all rights, claims and causes of action of any kind, whether legal or equitable, of the Debtors, for affirmative recovery of Cash or other property of the Estates, other than accounts receivable (whether such Causes are the subject of presently pending lawsuits, adversary proceedings or appeals or otherwise) existing before the Effective Date, including such that have accrued or may thereafter accrue relating to those matters that have occurred on or prior to the Effective Date.

2.12    Chapter 11 Cases:

(a)    The Chapter 11 case of Maluhia One, LLC, Case Number 10-30987-SGJ-11, Northern District Texas, Dallas Division, filed February 8, 2010;

(b)    The Chapter 11 case of Maluhia Eight, LLC, Case Number 10-30986-HDH-11, Northern District Texas, Dallas Division, filed February 8, 2010; and

2.13    Claim:  Any right against the Debtors to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.14    Collateral:  Property in which the Debtors have an interest that secures, in whole or in part, payment of an Allowed Claim.

2.15    Compass: Compass Bank.

2.16    Confirmation: Confirmation means the entry of an Order of the Court confirming this Plan.

2.17 <u>Confirmation Date</u>: The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

2.18 <u>Confirmation Hearing</u>: The date set by the Court to consider confirmation of the Plan pursuant to § 1129 of the Bankruptcy Code.

2.19 <u>Confirmation Order</u>: Order of the Court confirming the Plan and approving the transactions contemplated herein.

2.20 <u>Court</u>: The United States Bankruptcy Court for the Northern District of Texas or such other Court as may have jurisdiction of the Chapter 11 Case.

2.21 <u>Creditor</u>: Any entity that is the holder of a claim or an interest, including but not limited to: (a) a claim that arose on or before the Petition Date, (b) an interest that arose on or before the Record Date, (c) a claim against the Debtors' Estates of any kind specified in § 502(g), § 502(h), or § 502(i) of the Bankruptcy Code or (d) an Administrative Claim.

2.22 <u>Debtors</u>: Maluhia One, LLC and Maluhia Eight, LLC.

2.23 <u>Disclosure Statement</u>: The written Disclosure Statement in respect to this Plan approved by the Court pursuant to § 1125 of the Bankruptcy Code.

2.24 <u>Disputed Claim</u>: Any claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

2.25 <u>Effective Date</u>: The date fourteen (14) business days after the entry of the Confirmation Order or such other date as provided in the Confirmation Order.

2.26 <u>Equity Owners</u>: The member of each of the Debtors. In the case of Maluhia One—PRM Realty Group, LLC. In the case of Maluhia Eight, LLC—M-35, LLC.

2.27 <u>Estate</u>: The Estates created in the Chapter 11 Case for the Debtors by Bankruptcy Code § 541.

2.28 <u>Fee Application</u>: An application of a Professional Person under §§ 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 case.

2.29 <u>Final Distribution</u>: Final distribution under the Plan to be applied to the payment of the Allowed Claims.

2.30 <u>Final Order</u>: An order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or

rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law.

2.31 Holder or Claimholder: Any entity that is the holder of a claim, including but not limited to (a) a claim that arose on or before the Petition Date, (b) a claim against the Debtors' Estate of any kind specified in § 502(g), § 502(h) or § 502(i) of the Bankruptcy Code or (c) an Administrative Claim.

2.32 Impaired: When used with respect to any claim, interest, or class, it has the same meaning as that contained in § 1124 of the Bankruptcy Code.

2.33 Maluhia Eight Financing: Additional funds raised by Maluhia Eight from the Maluhia Eight Holders in the amount of approximately $1,050,000. The Maluhia Eight Financing will be have the following terms:

 (a) The Maluhia Eight Financing will mature on December 31, 2014.

 (b) The Maluhia Eight Financing will be secured by a second lien mortgage on the Maluhia Eight Property with terms substantially similar to the terms of the subordinated mortgage held by the Maluhia Eight Holders on the Petition Date.

 (c) Interest will be paid at an annual rate of 8%, to be paid current from an interest reserve established out of the proceedings of the Maluhia Eight Financing.

 (d) Land Bank Participation. Maluhia Eight Financing will be entitled to 10% of thethe difference between (a) the value of the Maluhia Eight Property at the time of sale or refinance, and (b) the amount of each of the Bank Lenders' loans pursuant to the Debtors' schedules, plus any sales commissions and customary closing costs at the time of the sale or refinance of the Maluhia Eight Property.

 (e) Home Construction Participation. The Maluhia Eight Financing will be entitled to 20% of the difference between (a) the net sale value of the completed home on the Maluhia Eight Property after deducting sales commissions, customary closing costs, and the construction costs associated with building the completed home on the Maluhia Eight Property, and (b) the value of the Maluhia Eight Property at the time of sale or refinance the Maluhia Eight Property subsequent to the Effective Date.

 (f) The proceeds of the Maluhia Eight Financing will fund debt service on the OneWest loan, OneWest's fees and costs, the interest reserve established to service the Maluhia Eight Financing, homeowner's association dues, accrued and future real estate taxes, accrued professional fees, insurance, and other property expenses. .

2.34 Maluhia Eight Holders: Individual holders of $2,435,000 in 12% Collateralized Profit Participation Debt Securities Due May 31, 2012 issued by the Maluhia Eight.

2.35  Maluhia Eight Offering: The issuance by Maluhia Eight of the 12% Collateralized Profit Participation Debt Securities Due May 31, 2012.

2.36  Maluhia Eight Property: Condominium apartment unit number 8 of the "Maluhia at Wailea" condominium project, located on that certain parcel of land situated at Honuaula, District of Makawao, Island and County of Maui, State of Hawaii, also known as 27 Malukai Lane, Maui, Hawaii 96753.

2.37  Maluhia One Financing: Additional funds raised by Maluhia One from the Maluhia Eight Holders in the amount of approximately $900,000. The Maluhia One Financing will be have the following terms:

(a)  The Maluhia One Financing will mature on December 31, 2014.

(b)  The Maluhia One Financing will be secured by a second lien mortgage on the Maluhia One Property with terms substantially similar to the terms of the subordinated mortgage held by the Maluhia One Holders on the Petition Date.

(c)  Interest will be paid at an annual rate of 8%, to be paid current from an interest reserve established out of the proceedings of the Maluhia One Financing.

(d)  Home Construction Participation. The Maluhia One Financing Bank Lenders will be entitled to 20% of the difference between (a) the net sale value of the completed home on the Maluhia One Property after deducting sales commissions, customary closing costs, and the construction costs associated with building the completed home on the Maluhia One Property, and (b) the value of the Maluhia One Property at the time of sale or refinance the Maluhia One Property subsequent to the Effective Date.

(e)  The proceeds of the Maluhia One Financing will fund debt service on the Compass loan, Compass's fees and costs, the interest reserve established to service the Maluhia One Financing, homeowner's association dues, accrued and future real estate taxes, accrued professional fees, insurance, and other property expenses.

2.38  Maluhia One Holders: Individual holders of $3,850,000 in 12% Collateralized Profit Participation Debt Securities Due January 31, 2012 issued by Maluhia One.

2.39  Maluhia One Offering: The issuance by Maluhia One of the 12% Collateralized Profit Participation Debt Securities Due January 31, 2012.

2.40  Maluhia One Property: Condominium apartment unit number 1 of the "Maluhia at Wailea" condominium project, located on that certain parcel of land situated at Honuaula, District of Makawao, Island and County of Maui, State of Hawaii, also known as 11 Malukai Lane, Maui, Hawaii 96753.

2.41  New Financings: Maluhia One Financing and Maluhia Eight Financing.

2.42 <u>Note Holders</u>: Maluhia One Holders and Maluhia Eight Holders.

2.43 <u>OneWest</u>: OneWest Bank FSB, as successor in interest to LaJolla Bank, FSB.

2.44 <u>Order</u>: An order or judgment of the Bankruptcy Court as entered on the docket.

2.45 <u>Petition Date</u>: February 8, 2010.

2.46 <u>Prime Rate</u>: The rate publicly quoted from time to time by <u>The Wall Street Journal</u> as the "prime rate."

2.47 <u>Priority Claims</u>: Allowed Claim entitled to a priority under, *inter alia*, Bankruptcy Code § 507(a).

2.48 <u>Pro Rata</u>: Means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim or Allowed Interest to the amount of the Allowed Claim or Allowed Interest is the same as the ratio of the amount of consideration distributed on account of All Allowed Claims and Allowed Interests of the class in which the particular Allowed Claim or Allowed Interest is included in the amount of All Allowed Claims and Allowed Interests of that Class.

2.49 <u>Professional Person</u>: Any entity retained or to be compensated pursuant to §§ 326, 327, 328, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code.

2.50 <u>Properties</u>: Maluhia One Property and Maluhia Eight Property.

2.51 <u>Reorganized Debtors</u>: The legal entities that shall survive the Debtors as of the Confirmation Date.

2.52 <u>Plan</u>: The Plan proposed by the Debtors, either in its present form or as it may be amended or modified.

2.53 <u>Secured Claim</u>: A claim of a creditor arising on or before the Petition Date to the extent (a) secured by a lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under § 553 of the Bankruptcy Code, in each case to the extent of the value of said creditor's interest in the Debtors' interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a secured creditor from making the election provided in § 1111(b)(2) of the Bankruptcy Code.

2.54 <u>Secured Creditor</u>: Any Creditor that is the holder of a Secured Claim.

2.55 <u>Tax Claim</u>: Any claim that is entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

2.56 <u>Undetermined Claim</u>: A claim that is (a) a Disputed Claim; (b) a claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined administrative claim in respect of an application of a professional person; or (d) a claim that is unliquidated or contingent.

2.57 <u>Unsecured Claim</u>: Any claim against the Debtors whatsoever, other than (1) a Secured Claim, or (2) a Claim that is not entitled to priority pursuant to the Bankruptcy Code.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS

3.1 <u>Designation of Classes of Claims</u>: The following is a designation of the Classes of Claims under this Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

      Class 1: Allowed Administrative Claims

      Class 2: Allowed Tax Priority Claims

      Class 3: Secured Claim of Bank Bank Lenders

      Class 4: Secured Claim of the Note Holders

      Class 5.1: General Unsecured Claims of Maluhia One

      Class 5.2: General Unsecured Claims of Maluhia Eight

      Class 6: Equity Interests

## ARTICLE IV
## PAYMENT OF ADMINISTRATIVE CLAIMS
## AND EXPENSES AND CERTAIN PRIORITY CLAIMS

4.1 <u>Administrative Claims</u>: (Class 1) – Except to the extent that the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims that are Allowed Claims prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid in full in cash on or before fourteen (14) business days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court. For purposes of payment of Administrative Claims, any administrative claimant desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty (30) days after the entry of an Order confirming the Plan or such Claimant shall be barred from asserting an Administrative Claim.

4.2 <u>Priority Tax Claims</u>: (Class 2) - Priority Tax Claims shall be paid by the Reorganized Debtors, up to the Allowed amount of such Claim, plus interest at the rate of 4.5% per annum accrued thereon on a quarterly basis on October 1, January 1, April 1 and July 1 of each year over a period not exceeding six (6) years after the date of assessment of the Claims, as provided in § 1129(a)(9)(C) of the Bankruptcy Code, commencing after the first full quarter following the Effective Date.

ARTICLE V
**<u>TREATMENT OF CLASSES OF CLAIMS AND INTERESTS</u>**

(a) <u>Secured Claim of Bank Lenders</u>: (Class 3) - Each Class 3 Claim of the Bank Lenders shall be treated as a fully Secured Claim in an amount to be determined by the Bankruptcy Court pursuant to 11 U.S.C. § 506(b) at the Confirmation Hearing. Each Class 3 Claim of the Bank Lenders shall be treated as follows:

(i) <u>Assumption of Bank Lenders Loans</u>: In conjunction with the Maluhia One Financing and the Maluhia Eight Financing, Debtors shall assume the Bank Lenders' indebtedness with no assumption fee, subject to the following modifications: (1) the maturity date shall be extended to April 1, 2011; 2) Debtors shall be entitled to two (2) one year extensions on the same terms provided that the loan is not in default; (3) the interest rate shall be reduced to 5.0% with 4% to be paid on a current basis and 1% to accrue on a simple, non-compounded basis and be paid at maturity; and (4) all amounts owed will be deaccelerated. Payment on the assumed Bank Lenders loans will resume on the 10th day of the first month after Debtors' assumption of the Bank Lenders loans have closed.

(ii) <u>Equity Owner Guarantees</u>. PRM Realty Group, LLC must execute a guaranty substantially in the form of that signed at the origination of the Compass loan. Peter Morris must execute guaranties substantially in the form of those signed at the origination of the OneWest and Compass loans. The guaranty executed by PRM Realty Group, LLC on behalf of Maluhia Eight shall be exempted from discharge in PRM Realty Group, LLC's Chapter 11 bankruptcy case. The guaranties executed by Peter Morris on behalf of Maluhia One and Maluhia Eight shall be exempted from discharge in Peter Morris's Chapter 11 bankruptcy case.

(iii) <u>Payment of Lender Accrued Fees and Costs</u>. Debtors, with the proceeds of the New Financings, will pay Bank Lenders' reasonably accrued fees and costs, not to exceed $30,000.00 in each loan, including attorney's fees, and appraisal fees, on or before the Effective Date; provided, however, that Bank Lenders' attorney fees shall be subject to the fee approval process under § 330 of the Bankruptcy Code in the event Bank Lenders and Debtors cannot agree to the amount of such fees.

(iv) <u>Defaults</u>. All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be waived, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date,

and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan and changes in ownership and control effectuated by the Plan, shall also be waived.

(v) <u>Default Interest/Penalties/Charges</u>. Except as provided herein, no default interest, late charges, or other penalties or monetary compensation or fees shall be required to be paid to Bank Lenders in connection with the Debtors' assumption of the Bank Lenders loans, the treatment provided under this Plan for Allowed Class 3 Claims, or the reorganization of Debtors and/or any change of control and ownership effectuated by the Plan.

(vi) <u>Collateral</u>. Bank Lenders shall retain all of their liens and security interests in Debtors' assets, including the Properties, granted to them pursuant to the respective Bank Lenders' loan documents, with the same validity, enforceability, attachment, perfection, priority, and legal rights that existed on the Petition Date.

(vii) <u>Waivers/Consents</u>. Bank Lenders shall be deemed to consent to and approve the transactions and changes to Debtors contemplated by the Plan, including, without limitation, the payments to the holders of Allowed Claims and Allowed Administrative Claims pursuant to the Plan.

Class 3 Claims are impaired under the Plan.

(b) <u>Secured Claim of the Note Holders</u>. (Class 4) - The Class 4 Claim of the Note Holders shall be converted to equity ownership interests in the respective Debtor. The Class 4 Claim of the Note Holders shall be treated as follows:

(i) <u>Land Bank Participation</u>. Maluhia One Holders will be entitled to the 100% of the difference between the (a) value of the Maluhia One Property at the time of sale or refinance, and (b) the amount of each of the OneWest loan pursuant to Maluhia One's schedules, plus any sales commissions and customary closing costs at the time of the sale or refinance of the Maluhia One Property. Maluhia Eight Holders will be entitled to 90% of the difference between the (a) value of the Maluhia Eight Property at the time of sale or refinance, and (b) the amount of the Compass loan pursuant to Maluhia One's schedules, plus any sales commissions and customary closing costs at the time of the sale or refinance of Maluhia Eight Property.

(ii) <u>Home Construction Participation</u>. Note Holders will be entitled to 35% of the difference between (a) the net sale value of the completed home on the respective Property after deducting sales commissions, customary closing costs, and the construction costs associated with building the completed home on the respective Property, and (b) the value of the respective Property at the time of sale or refinance of the respective Property subsequent to the Effective Date.

     (iii) <u>No Voting or Control Rights</u>.  Note Holders shall have no voting, control, or other ownership rights as a result of their equity ownership in the Debtors. The Note Holders sole right will be to receive the aforementioned participation proceeds.

 <u>Release of Obligations under the Maluhia One and Maluhia Eight Offerings</u>.  In consideration for the equity ownership, the Note Holders will release Debtors, PRM Realty Group, LLC, Bank of New York, and Bank of America from any and all obligations under the promissory notes, subordinated mortgage, indenture, guaranty, private placement memorandum and other documents evidencing the Maluhia One Offering and Maluhia Eight Offering.

  Class 4 Claims are impaired under the Plan.

  5.2 <u>General Unsecured Claims of Maluhia One</u>:  (Class 5.1) – Class 5.1 Allowed General Unsecured Claims of Maluhia One consist of all other Allowed Claims against Maluhia One not placed in any other Class, specifically Classes 3 and 4.  Creditors holding Allowed Class 5.1 General Unsecured Claims shall receive 100% of their Allowed Claims out of the proceeds to be received by Maluhia One pursuant to the Home Construction Participation rights, or if the proceeds are less than 100% of the Creditors Allowed Claims, a pro rata amount of the proceeds.

  Class 5.1 General Unsecured Claims of Maluhia One are impaired under the Plan.

  5.3 <u>General Unsecured Claims of Maluhia Eight</u>:  (Class 5.2) – Class 5.2 Allowed General Unsecured Claims of Maluhia Eight consist of all other Allowed Claims against Maluhia Eight not placed in any other Class, specifically Classes 3 and 4.  Creditors holding Allowed Class 5.2 General Unsecured Claims shall receive 100% of their Allowed Claims out of the proceeds to be received by Maluhia Eight pursuant to the Home Construction Participation rights, or if the proceeds are less than 100% of the Creditors Allowed Claims, a pro rata amount of the proceeds.

  Class 5.2 General Unsecured Claims of Maluhia Eight are impaired under the Plan.

  5.4 <u>Equity Owners</u>: (Class 6) – Class 6 Equity Owners shall retain their interests in the Debtors, in exchange for their relinquishing all rights to the Land Bank Participation and their commitment to use their skill, effort, and experience to develop a home on the Properties, as the case may be, for the benefit of the Note Holders. The Class 6 Claim of the Equity Owners shall be treated as follows:

    (i) <u>Land Bank Participation</u>. The Equity Owners will not be entitled to any of the difference between (a) the value of the Properties at the time of sale or refinance, and (b) the amount of the Bank Lenders loans pursuant to the Debtors' schedules, plus any sales commissions and customary closing costs at the time of the sale or refinance of the Properties.

    (ii) <u>Home Construction Participation</u>. The Equity Owners will be entitled to 45% of the difference between (a) the net sale value of the completed homes on the Properties after deducting sales commissions, customary closing costs, and the construction costs

**DEBTORS' JOINT PLAN OF REORGANIZATION – Page 11 of 19**

associated with building the completed homes on the Properties, and (b) the value of the Properties at the time of sale or refinance the Properties subsequent to the Effective Date.

    (iii) <u>Developer Fee</u>. The Equity Owners will be entitled to a $300,000 developer fee for management of the construction of a home on each of the Properties.

 Class 6 Interests are impaired under the Plan.

 5.5 <u>Payments to the United States Trustee</u>:  The Reorganized Debtors shall pay all quarterly fees of the United States Trustee until the Case is closed.

## ARTICLE VI
## MEANS OF IMPLEMENTING THE PLAN

 6.1 <u>Development and/or Sale of the Properties</u>:  The Reorganized Debtors shall develop and/or sell the Properties over a period of 5 years following the Effective Date.

 6.2 <u>Reorganized Debtors</u>:  Upon the Confirmation Date of the Plan, the Reorganized Debtors shall be the survivor of the Debtors.

 6.3 <u>Documents</u>:  All necessary documents for the implementation of this Plan shall be executed by all necessary parties in interest on the Effective Date, unless an earlier date is provided for a particular document or documents under this Plan. To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court for determination. Upon the Effective Date, or as soon as practicable after the Court shall have resolved said issues, all such documents shall be binding on the Debtors, the creditors, and all other parties hereto.

 6.4 <u>Rights Under § 1129(b)</u>:  If any impaired class votes to accept the Plan, but not all classes accept the Plan, Debtors will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of § 1129(b) in that event.

## ARTICLE VII
## PROVISIONS FOR THE REJECTION OF
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

 7.1 <u>General Assumption of Executory Contracts</u>: All executory contracts and unexpired leases of the Debtors (including, but not limited to, those listed on the Debtors' Schedules) which are not expressly rejected on or before 90 days after the Confirmation Date or not otherwise specifically treated in this Plan or in the Confirmation Order shall be deemed to have been assumed on the Confirmation Date. The Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to § 365 of the Code. Each prepetition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. Listing a contract or lease as an executory

contract or unexpired lease will not constitute an admission by the Debtors or the Debtors-in-Possession that such contract or lease is an executory contract or unexpired lease or that Debtors or the Debtors-in-Possession has any liability thereunder. The Confirmation Order shall constitute an order of the Bankruptcy Court approving assumption under § 365 of the Bankruptcy Code as of the Effective Date. The Reorganized Debtors shall continue to have all rights of assignment contained in 11 U.S.C. § 365 of any executory contract or unexpired lease following confirmation of this Plan.

   7.2   Cure of Defaults: The Reorganized Debtors shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of §§ 1123(a)(5)(G) and 365 (b) of the Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court within fourteen (14) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtors may pay such amount as may be agreed upon between the Reorganized Debtors and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within fourteen (14) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if, the Reorganized Debtors files, within sixty (60) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing in respect of the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Reorganized Debtors on the later of: (1) fourteen (14) days after the expiration of the sixty (60) day period for filing an objection in respect of any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, fourteen (14) days after an order of the Court allowing such Claim becomes a Final Order.

   7.3   Claims for Damages: Any Claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Reorganized Debtors such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as Class 5.1 or 5.2 claims, as applicable. Any claim not filed within such time will be forever barred from assertion against the Debtors or their Estates.

   7.4   Reservation of Rights: The Debtors reserve the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to 90 days after the Confirmation Date.

   7.5   Proofs of Claims: Each entity that is a party to an executory contract or unexpired lease rejected at Confirmation, and only such entity, shall be entitled to file, not later than thirty (30) days after the Confirmation Date or such later date specified by the Court in the Confirmation Order or in an Order approving such rejection, a proof of claim for damages alleged to have arisen from the rejection of the contract or lease to which such entity is a party.

## ARTICLE VIII
## **MODIFICATION OF THE PLAN**

8.1 <u>Amendments Prior to Confirmation Date</u>: Debtors may modify the Plan prior to Confirmation, and the Plan, as amended, shall become the new Plan of Reorganization.

8.2 <u>Amendments After Confirmation Date</u>: Debtors may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

8.3 <u>Effect on Claims</u>: A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE IX
## **RETENTION OF JURISDICTION**

9.1 <u>Purposes</u>: Notwithstanding entry of the Confirmation Order, the Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

    i. to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any claim or interest;

    ii. to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with § 503(b) of the Bankruptcy Code or this Plan;

    iii. to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which any Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

    iv. to hear and determine any and all actions initiated by the Reorganized Debtors, whether by motion, complaint or otherwise;

    v. to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

    vi. to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or

        omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

    vii.    to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

    viii.    to allow, disallow, determine, liquidate or estimate any claim or interest and to enter or enforce any order requiring the filing of any such claim or interest before a particular date;

    ix.    to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtors from creditor actions;

    x.    to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code and/or applicable bankruptcy law and/or applicable bankruptcy law;

    xi.    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

    xii.    to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

    xiii.    to enforce all orders, judgments, injunctions, and rulings entered in connection with the Cases;

    xiv.    to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

    xv.    to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

    xvi.    to enter a Final Order and final decree closing the Chapter 11 case.

    9.2    <u>Exclusive Jurisdiction</u>: The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal

**DEBTORS' JOINT PLAN OF REORGANIZATION – Page 15 of 19**

or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

9.3     Abstention:  If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 case, including the matters set forth in this Article IX, this Article IX shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

9.4     Closing of Case:  The Reorganized Debtors shall file an application for final decree and to close the Chapter 11 Case and promptly set a hearing no later than twelve (12) months after the Effective Date, or show cause to the Court within such period why the Court should not enter a final decree.  Any adversary proceeding that is a Cause of Action shall survive the entry of a final decree and closing of the Chapter 11 Case, and jurisdiction shall be retained over such proceeding.

## ARTICLE X
## CAUSES OF ACTION

10.1     Retention of Causes of Action:  All Claims and Causes of Action owned by the Debtors, Causes of Action that could have been brought by a Creditor on behalf of the Debtors, and all Causes of Action created by the Bankruptcy Code not waived or released under the Plan may be pursued by the Reorganized Debtors for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code.  The Reorganized Debtors shall have the exclusive right to settle or compromise all such Causes of Action subject to Court approval.  Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.

## ARTICLE XI
## RESOLUTION OF UNDETERMINED CLAIMS

11.1     Procedure:  Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtors may file with the Court objections to Claims and Interests and shall serve a copy of each such objection upon the Holder of the Claim or Interest to which such objection pertains.  Unless otherwise ordered by the Court, the Reorganized Debtors shall litigate to judgment, settle, or withdraw objections to contested claims.

11.2     Allowance of Claims:  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Debtors make any distributions to creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the order

allowing such claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

11.3 <u>Rights of Creditors</u>: Unless and until an Undetermined Claim becomes an Allowed Claim, no creditor holding such a claim shall have any claim against the distribution held or reserved by the Reorganized Debtors with respect to such claim.

ARTICLE XII
<b><u>GENERAL PROVISIONS</u></b>

12.1 <u>Certain Rights Unaffected</u>: Except as otherwise provided herein, any rights or obligations which the Debtors' creditors may have among themselves as to their respective claims or the relative priority or subordination thereof.

12.2 <u>Headings</u>: The article and section headings used in this Plan are inserted for convenience and reference only and neither constitutes a part of this Plan nor in any manner affects the terms, provisions or interpretations of this Plan.

12.3 <u>Severability</u>: Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

12.4 <u>Governing Law</u>: Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

12.5 <u>Successors and Assigns</u>: The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

12.6 <u>Discharge of Claims</u>: Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtors and the Reorganized Debtors or any of their assets or properties to the extent permitted by § 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against the Debtors and the Reorganized Debtors shall be, and shall be deemed to be, discharged; and all holders of Claims shall be precluded from asserting against the Reorganized Debtors or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of claim.

12.7 <u>Discharge of Debtors</u>: Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the

Debtors or any of their assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtors shall be deemed discharged and released to the extent permitted by § 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the holder of the claim based upon such debt has accepted the Plan.  Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors.  Except as provided herein, pursuant to § 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors at any time obtained to the extent it relates to a claim discharged, and operates as an injunction against the prosecution of any action against the Debtors or the property of the Debtors, to the extent it relates to a claim discharged.

12.8   *Exculpations*:  The Debtors' Professional Persons shall not have or incur any liability to any holder of a Claim for any act, event, or omission in connection with, or arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

12.9   *Injunctive Relief*:  Except as provided herein, on and after the Confirmation Date, all creditors and persons acting in concert with them are enjoined and restrained pursuant to § 105 of the Code from taking any action to correct or enforce any Claim directly or indirectly against the Reorganized Debtors in any manner inconsistent with the terms contained in the Plan.  The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

Dated:  June 1, 2010.

**MALUHIA ONE, LLC**

By:  PRM Management of Illinois, Inc.,
its Manager


By: */s/ Peter R. Morris*
Peter R. Morris, its President

**MALUHIA EIGHT, LLC**

By:  PRM Management of Illinois, Inc.,
its Manager


By: */s/ Peter R. Morris*
Peter R. Morris, its President

**DEBTORS' JOINT PLAN OF REORGANIZATION – Page 18 of 19**

OF COUNSEL:

By: */s/ Gerrit M. Pronske*
Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: mgoolsby@pronskepatel.com

**COUNSEL FOR THE DEBTORS**